**In the Interest of J.M.W. and D.D.W.**

**JUVENILE OFFICER, Plaintiffs–Respondents,**

v.

**D.D.W., Sr. (Natural Father), Defendant–Appellant.**

**No. WD 43791.**

Missouri Court of Appeals, Western District.

Oct. 8, 1991.

John M. Torrence, Kansas City, for defendant-appellant.

Steven E. Crick, Independence, Mary A. Marquez, Lynn Menefee, Kansas City, for plaintiffs-respondents.

Before NUGENT, C.J., KENNEDY, J. and WASSERSTROM, Senior Judge.

PER CURIAM:

Appellant, D.D.W., Sr., appeals from a judgment terminating his parental rights to his daughter, J.M.W., and his son, D.D.W., placing them in the custody of the Missouri Division of Family Services (DFS) for adoption. Appellant contends that the court below erred in its decision to place the children with the DFS as this was against the weight of the evidence and that the best interests of the children would be served by placement with their paternal grandmother, J.W. Appellant further contends that the trial judge's decision was erroneous as it completely ignored appellant's request to place the children with J.W. pursuant to § 211.477, RSMo 1986. Affirmed.

D.D.W., Sr., and A.A. were the parents of two children, J.M.W., a female born on September 15, 1986, and D.D.W., a male born on June 18, 1988. A.A., the children's natural mother, has consented to the termination of her parental rights to J.M.W. and D.D.W. Both of these children were taken into the custody of the DFS within months of their births. J.M.W. was originally taken into custody in November, 1986. She was returned to her mother, under the supervision of the DFS in August, 1987. Both J.M.W. and D.D.W. were taken into DFS custody in December, 1988. Patti Raouf, the DFS caseworker, found the children to be without adequate food and without utilities. At the time the children were removed from the mother's care there was no refrigerator, stove, washer or dryer in the home.

Appellant was, at this time, incarcerated at the Kansas City Municipal Correctional Institute. He was sent a letter listing his legal rights and responsibilities as a parent. D.D.W., Sr., contacted Ms. Raouf in January, 1989. The appellant saw the children three times in February and March of that year. A written service agreement was entered into by the father and the DFS. He agreed to provide adequate housing for the children upon his release, maintain contact with the caseworker, and submit to drug screening if necessary. When Ms. Raouf went back on the next scheduled visit to have him sign the typed copy of the agreement, she was unable to locate him.

Appellant telephoned A.A. at a time when A.A. was hospitalized for drug inpatient treatment on June 19, 1989. Ms. Raouf, who was visiting A.A., spoke to appellant at this time. He would not tell her of his whereabouts or give her a phone number where he could be located. She gave him her phone number, however. Appellant never contacted the caseworker. He explained his failure to contact her by stating that he was "on the run" because he had escaped from the correctional facility.

On June 25, 1989 a First Amended Petition for Termination of Parental Rights was filed in the interest of J.M.W. On October 6, 1989 appellant was discovered to be at the Jackson County Detention Center. He was sent another "notice to incarcerated parents." He sent a letter to Ms. Raouf for his daughter on October 30. On November 14, 1989, a petition for termination was filed on behalf of D.D.W. After a hearing on June 28, 1990, the court terminated appellant's parental rights.

During the termination hearing appellant, who was present but had recently been convicted of Burglary in the Second Degree and Stealing over $150 requested that custody of the children be placed with his mother, J.W. At the time the children were originally picked up in December, 1988, a home study was requested by J.W. The DFS recommended that the children should not be placed in J.W.'s home as her husband and D.D.W., Sr. were going to return to the home after their jail sentences. After the home study was completed, Ms. Raouf was not contacted at any time by appellant's relatives.

Appellant contends that the judgment of the trial court is clearly erroneous in placing custody of the children with the DFS as the best interests of the children require they be placed with their grandmother, J.W., and that the trial court completely ignored his request that they be placed with his mother.

In a case involving the termination of parental rights, the trial court's order will be sustained by this court unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *T.S. v. P.S.*, 797 S.W.2d 837, 840 (Mo.App. 1990). The facts and their reasonable inferences are reviewed in the light most favorable to the trial court's order. *Id.* This is a termination of parental rights case. Appellant does not argue that his rights were *wrongfully* terminated. Instead appellant finds fault in the disposition of the children.

The decision to terminate appellant's parental rights is supported by the evidence. The trial court scrupulously followed the procedure outlined in § 211.447.2(1), RSMo 1986, which allows for termination in the best interest of the child if, "[t]he child has been abandoned." The court is instructed to find that the child has been abandoned if, "[t]he parent has without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so," for the statutorily prescribed period, in this case

six months or longer. § 211.447.2(1)(b), RSMo 1986. The trial court made such findings as to J.M.W. and D.D.W. and the evidence supports the finding of abandonment. The evidence supports the conclusion that the termination was in the best interests of both of the children.

Upon termination it is within the power of the court to determine the transfer of legal custody. The relevant statute, § 211.477, RSMo 1986, provides:

1. If, after the dispositional hearing, the court finds that one or more of the grounds set out in section 211.447 exists or that the parent has consented to the termination pursuant to section 211.444 and that it is in the best interests of the child, the court may terminate the rights of the parent in and to the child. After ordering termination and after consideration of the social study and report, the court shall transfer legal custody to:

(1) The division of family services;

(2) A private child-placing agency;

(3) A foster parent, relative or other person participating in the proceedings pursuant to section 211.464; or

(4) Any other person or agency the court deems suitable to care for the child.

In other words, it is within the discretion of the trial court to determine the placement of the child consistent with that child's best interests. The trial court ordered that both children remain in the custody of the DFS. Although the court does not mention a possible placement with J.W., nothing in the statute requires it to do so.

The trial court did not abuse its discretion in not placing the children with their paternal grandmother, J.W. The home study requested by J.W. recommended against placing the children with her. At the time of that study she was unemployed and indicated that her husband and her son, D.D.W., Sr., would both return to the home once they were released from jail. The criminal records of both men revealed an involvement with drugs. J.W. never

appeared at any of the court hearings concerning the children. She never attempted to contact DFS to maintain contact with the children. In short, there was ample evidence to dispute appellant's contention that the court erred in not placing the children with J.W. The judgment of the trial court ordering the termination of D.D.W., Sr.'s parental rights as to J.M.W. and D.D.W. is affirmed.

All concur.